**Colin BRIDGE, individually, and as Executor of the Estate of Marie Bridge, his deceased wife, Plaintiff,**

v.

**CORNING LIFE SCIENCES, INC. d/b/a Corning–Bioran Laboratories, Defendant.**

No. 2:96–CV–8.

United States District Court, D. Vermont.

Feb. 13, 1998.

James H. Gray, Jr., Shillen & Gray, Woodstock, VT, for Plaintiff.

John J. Zawistoski, Ryan, Smith & Carbine Ltd., Rutland, VT, Dennis R. McCoy, Saperston & Day, P.C., Buffalo, NY, for Defendant.

## OPINION AND ORDER

SESSIONS, District Judge.

Colin Bridge has brought suit on behalf of himself and his deceased wife Marie Forest Bridge ("Bridge"), alleging, *inter alia,* a violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9, § 2453 (1993) ("CFA") for the misinterpretation of her Pap smear. The matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). In a Report and Recommendation filed November 4, 1997, the Magistrate Judge recommended that summary judgment on this count be denied. De-

fendant Corning Life Sciences, Inc. ("Corning") filed objections to the Report, to which Bridge responded.

A district court must make a *de novo* determination of those portions of the Report to which objection is made. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *Id.* After careful review of the file, the Report, and the submissions of the parties, this Court MODIFIES the recommendations as follows.

The facts of the case have been thoroughly recited in Magistrate's Report and Recommendation filed October 6, 1997 (familiarity with which is presumed), and need not be repeated here. Corning objects that the magistrate applied the incorrect standard on a motion for summary judgment, and that the CFA does not afford a cause of action on the facts of this case.

I. *Applicability of the CFA to the provision of professional services.*

■ The CFA prohibits "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." Vt. Stat. Ann. tit. 9, § 2453(a). The purpose of the CFA is "to protect the public from unfair and deceptive business practices and to encourage fair and honest competition." *Bisson v. Ward,* 160 Vt. 343, 348, 628 A.2d 1256, 1260 (1993); *see* Vt. Stat. Ann. tit. 9, § 2451 (1993).

Section 2461(b) of Title 9 provides a private right of action to consumers who contract for goods or services in reliance upon false or fraudulent representations or practices prohibited by Section 2453, or who sustain damages or injury as a result of same. Vt. Stat. Ann. tit. 9, § 2461(b) (1993).

■ A "deceptive act or practice" "is a material representation, practice or omission likely to mislead a reasonable consumer." *Bisson,* 160 Vt. at 351, 628 A.2d at 1261. This Court has predicted, in a case involving the provision of legal services, that the Vermont Supreme Court would rule that the CFA does not exempt professional service

providers from private prosecution for unfair or deceptive acts or practices. *Kessler v. Loftus,* 994 F.Supp. 240, 242 (D.Vt.1997). Consistent with that opinion, the Court modifies the Magistrate's recommended conclusion that the CFA applies to matters of professional judgment, and holds that the CFA applies to the provision of professional services.

## II. *Applicability of the CFA to the facts of this case*

 The CFA is "remedial in nature" and must be construed "liberally so as to furnish all the remedy and accomplish all the purposes intended." *State v. Custom Pools,* 150 Vt. 533, 536, 556 A.2d 72, 74 (1988). The Vermont Supreme Court has adopted the Federal Trade Commission standard for determining whether an act or practice is deceptive: "1) there must be a representation, practice, or omission likely to mislead consumers; 2) the consumers must be interpreting the message reasonably under the circumstances; and 3) the misleading effects must be 'material,' that is, likely to affect consumers' conduct or decision with regard to a product." *Poulin v. Ford Motor Co.,* 147 Vt. 120, 124–25, 513 A.2d 1168, 1171–72 (1986); *Peabody v. P.J.'s Auto Village, Inc.,* 153 Vt. 55, 57, 569 A.2d 460, 462 (1989). The Vermont Supreme Court has also drawn a distinction between misrepresentations involving opinions and those involving facts, holding that the latter are actionable under the CFA, although the former are not. *Winton v. Johnson & Dix Fuel Corp.,* 147 Vt. 236, 240, 515 A.2d 371, 374 (1986). *See also Kessler,* at 243.

As the Magistrate Judge previously found, and this Court adopted,

[t]he undisputed facts reveal that the 1991 slide contained many cancerous cells, and that they were not hidden or obscured. The interpretation of this slide was not a matter of judgment. Qualified cytotechnologists who viewed the slide could not differ as to whether the slide was abnormal, although they could disagree about the severity of the abnormality.

October 6, 1997 Report and Recommendation at 13–14. Corning insists that there is no evidence that the slide was not read, as opposed to misread. Bridge argues that a reasonable jury could conclude that the cytotechnologist did not read the slide, based on the fact that it takes approximately five minutes to screen a cytology slide; that on the day the slide was read the cytotechnologist was issued her daily quota of 90 slides, which at five minutes per slide would take seven and one-half hours to screen; and that on that particular day the cytotechnologist worked eight hours, but attended a seminar which consumed more or less half of her work day. Bridge contends further that Corning represented that it had properly and accurately examined the slide and that his decedent relied on this information. Based on these facts, reasonable jurors could conclude that the cytotechnologist did not read the slide; accordingly the Court adopts the Recommendation that summary judgment be denied on the Consumer Fraud Act claim.